**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ADRIAN COSS, individually and behalf of all others similarly situated, | CIVIL ACTION |
| Plaintiff, | |
| v. | CASE NO. 1:21-cv-01862 |
| FRONTLINE ASSET STRATEGIES, | JURY TRIAL DEMANDED |
| Defendant. | |

**CLASS ACTION COMPLAINT**

NOW COMES Plaintiff, ADRIAN COSS, by and through his undersigned counsel, and pursuant to Federal Rule of Civil Procedure 23 brings this putative Class Action Complaint on behalf of all others similarly situated:

**I. Parties, Jurisdiction and Venue**

1.      Plaintiff ADRIAN COSS ("Plaintiff") is a natural person and a resident of the State of Illinois.

2.      Defendant FRONTLINE ASSET STRATEGIES (hereinafter, "Frontline" or "Defendant") is a debt collection agency with its principal place of business located at 2700 Snelling Avenue North, Suite 250, Roseville, Minnesota 55113.

3.      Frontline is a company that uses the mail, telephone, or facsimile in a business the principal purpose of which is the collection of debts, or that regularly collects or attempts to collect debts alleged to be due another.

4.      Frontline is a "debt collector" as defined by 15 U.S.C. § 1692a(6) because Frontline uses mail, telephone or facsimile in a business the principal purpose of which is the collection of debts, or that regularly collects or attempts to collect debts incurred or alleged to have been incurred for personal, family or household purposes on behalf of creditors.

1

5.     The Court has jurisdiction over this Civil Action pursuant to 28 U.S.C. § 1331 because this Civil Action arises out of Defendant's violations of Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*

6.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because Defendant conducts significant and continuous business in this judicial district by and through the mailing of collection letters to persons like Plaintiff.

## II. Summary of the Fair Debt Collection Practices Act

7.     Congress enacted the FDCPA in 1977 to respond to the "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a). When Congress enacted the FDCPA it was concerned that "abusive debt collection practices contribute to the number of personal bankruptcies, to material instability, to the loss of jobs, and to invasions of individual privacy." *Id.*

8.     In enacting the FDCPA, Congress specifically found that "existing laws . . . [we]re inadequate to protect consumers," and that "the effective collection of debts" does not require "misrepresentation or other abusive debt collection practices." 15 U.S.C. §§ 1692(b) & (c).

9.     Congress explained that the purpose of the FDCPA was not only to eliminate abusive debt collection practices, but also to "insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." *Id.* § 1692(e). After determining that the existing consumer protection laws were inadequate, *id.* § 1692(b), Congress gave consumers a private cause of action against debt collectors who fail to comply with the Act. *Id.* § 1692k.

### III. Background Allegations

10.     As detailed below, Frontline acted as "debt collector" as defined by §
1692a(6) when it sent form debt collect letters to Plaintiff in an attempt to collect a credit
card debt purportedly owned by LVNV Funding, LLC ("LVNV").

11.     On or about March 15, 2021, Frontline sent to the Plaintiff a collection
letter (the "March 15th Letter") regarding an alleged credit card debt that Plaintiff
allegedly owed to LVNV (the "Subject Debt").

12.     LVNV is a Delaware limited liability company with its principal place of
business located at 6801 S Cimarron Road, Suite 424J, Las Vegas, Nevada 89113.

13.     LVNV is a debt buyer because its business consists of purchasing charged off
consumer credit card debts from original creditors or other debt buyers and utilizing debt
collectors like Frontline to collect the debts.

14.     LVNV purchases past-due and defaulted consumer accounts for pennies
on the dollar.

15.     The principal purpose of LVNV is the collection of defaulted debts.

16.     The March 15th Letter was the first written communication from Frontline
to the Plaintiff with regards to the Subject Debt.

17.     The March 15th Letter states that LVNV is the "Current Creditor", that the
"Original Creditor" was Synchrony Bank and that the "Merchant" was "Sam's
Clubpersonalcredit".

18.     According to the March 15th Letter, at some point in time after the Subject
Debt fell into default status, the Subject Debt was sold by Synchrony Bank to some
entity and allegedly purchased by LVNV.

19.     Plaintiff does not know if LVNV purchased the Subject Debt directly from Synchrony Bank or whether LVNV purchased the Subject Debt from another debt buyer.

20.     The Subject Debt arose out of credit card transactions that Plaintiff charged for personal, family and household purposes.

21.     The alleged SYNCHRONY BANK obligation is a "debt" as defined by Section 1692a(5) of the FDCPA.

22.     The Subject Debt fell into default status after Plaintiff became unemployed.

23.     When Defendant sent the March 15th Letter to Plaintiff, Defendant regarded Plaintiff as a "Consumer" as this term is defined by Section 1692(a)(3) of the FDCPA.

24.     Plaintiff received and read the March 15th Letter.

25.     The March 15th Letter states starts off by saying: "Dear Adrian Coss: Your account has been placed with our office for collections. You owe $3862.55."

26.     The second sentence of the March 15th Letter states "[i]f we are unable to resolve your account during the time it remains in our office our client will recall your account and may forward it to an attorney." (at times the "Attorney Disclosure Language").

27.     Below the signature line of the March 15th Letter, the Letter includes the following words that debt collectors are required to use in their first written communications with consumers:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification.

(hereafter the "Validation Notice").

4

28.     At the time the March 15th Letter was mailed to Plaintiff, despite the Letter's use of the Attorney Disclosure Language, Defendant did not know whether the Subject Debt would be recalled and sent to an attorney if Plaintiff was unable to resolve the Subject Debt by a date certain.

29.     At the time the March 15th Letter was mailed to Plaintiff, Defendant knew that the Subject Debt would not be recalled and sent to an attorney if Plaintiff was unable to resolve the Subject Debt by a date certain.

30.     Alternatively, at the time the March 15th Letter was mailed to Plaintiff, Defendant knew that Subject Debt would be recalled and sent to an attorney if Plaintiff was unable to resolve the Subject Debt by a date certain.

31.     On information and belief, at the time the March 15th Letter was mailed to Plaintiff, Defendant knew that the Subject Debt was subject to recall by a date certain.

32.     Accordingly, Defendant's use of the Attorney Disclosure Language constituted a false and misleading statement made to trick Plaintiff into think that failure to pay would automatically lead to the Subject Debt being recalled by LVNV for the purpose or possibility of forwarding the Subject Debt to an attorney for possible legal action.

33.     In reality, on information and belief, in practice, LVNV would automatically recall debts by a date certain.

34.     The way the March 15th Letter is written is false and misleading because the Letter implied to Plaintiff that his account would be recalled based upon an individualized assessment of whether or not Plaintiff was able to "resolve [the] account during the time it remain[ed] in our office".

35.     On information and belief, Defendant utilized the Attorney Disclosure Language to pressure Plaintiff and others like him into paying the Subject Debt to avoid

having the Subject Debt forwarded to an attorney to raise "the price of poker" or for possible legal action. *See, e.g, Avila v. Rubin*, 84 F.3d 222, 229 (7th Cir. 2016) ("An unsophisticated consumer, getting a letter from an "attorney," knows the price of poker has just gone up. And that clearly is the reason why the dunning campaign escalates from the collection agency, which might not strike fear in the heart of the consumer, to the attorney, who is better positioned to get the debtor's knees knocking.").

36.    The manner in which the Attorney Disclosure Language uses the phrase "[LVNV] will recall your account and may forward it to an attorney" was understood by Plaintiff and other persons like him (the so-called unsophisticated consumer) that if he did not pay the account LVNV would recall the Subject Debt and that any possible referral of the Subject Debt would be sent to an outside attorney/law firm hired by LVNV.

37.    The Attorney Disclosure Language also reasonably suggested to Plaintiff and unsophisticated consumers that LVNV may have simply assigned the Subject Debt to Defendant for collection purposes and that Defendant was merely collecting the Subject Debt as an agent for LVNV. *See, e.g., Schutz v. Arrow Fin. Servs., LLC,* 465 F. Supp. 2d 872, 876 (N.D. Ill. 2006) (HN7 "[A] debt collector may be held vicariously liable for the actions of a second debt collector working as an agent of the first[.]").

38.    On information and belief, when the March 15th Letter was mailed to Plaintiff, Defendant *knew* that LVNV *was not going to refer* the Subject Debt to a lawyer if the Subject Debt was not resolved by a date certain - where it was known between Defendant and LVNV (by a specifically contracted date or by virtue of a custom and practice) that LVNV would recall the Subject Debt by a date certain.

39.    On information and belief, when the March 15th Letter was mailed to Plaintiff, Defendant *did not know* whether *LVNV was not going to refer* the Subject Debt

to a lawyer if the Subject Debt was not resolved by a date certain - where it was known between Defendant and LVNV (by a specifically contracted date or by virtue of a custom and practice) that LVNV would recall the Subject Debt by a date certain.

40. Alternatively, on information and belief, when the March 15th Letter was mailed to Plaintiff, Defendant *knew* that LVNV was going to refer the Subject Debt to a lawyer if the Subject Debt was not resolved by a date certain - where it was known between Defendant and LVNV (by a specifically contracted date or by virtue of a custom and practice) that LVNV would recall the Subject Debt by a date certain.

41. Defendant's use of the Attorney Disclosure Language was used to convey a false, deceptive and misleading representation to Plaintiff regarding the manner in which LVNV would (in reality) recall the subject account. Upon information and belief, LVNV would have recalled the subject account at a particular point in time and LVNV was not tying the recall of the subject account to any so-called inability to resolve the debt while the debt "remain[ed] in our office."

42. Upon information and belief, Defendant knew that LVNV had assigned a set time-frame for it to recall the subject account that *was not tied* to Plaintiff's ability or inability to resolve the subject account.

43. Upon information and belief, Defendant knew that LVNV did not tie the recall of the Subject Debt (or any similar consumer credit card based debt) to a referral to outside legal counsel.

44. Upon information and belief, Defendant knew that LVNV maintained an *ad hoc* approach to assigning recalled debts to outside counsel.

45. Defendant referred to the account being forwarded to an attorney solely for the purpose of misleading Plaintiff into thinking that the "price of poker" had gone up.

46. Plaintiff, as an unsophisticated consumer, read the Attorney Disclosure

Language to mean that if he did not resolve the debt *while the account is with the Defendant's office*, an attorney would very likely review the Subject Debt for the purpose of preparing a lawsuit or for the purpose of engaging in lawyer based collection actions.

47. Based upon the language used by Defendant, Plaintiff did not know how long the Subject Debt would remain with Defendant before being "recall[ed]".

48. Plaintiff was left to believe that he had to pay the Subject Debt immediately, or risk the account being referred to an attorney for possible lawsuit or other lawyer based collection actions.

49. The purpose and effect of the threat to forward the account to an attorney is to mislead, deceive and scare consumers into believing that a lawsuit to collect their debt was a real possibility.

50. As a result of the Defendant's violations of the FDCPA, the Plaintiff was harmed as a result of being subjected to deceptive and misleading collection practices, from which he had a substantive right to be free.

51. In particular, Plaintiff was subjected to the increased material risk of financial harm that Congress intended to prevent by enacting the FDCPA. Plaintiff's decision making process was influenced by Defendant's misleading disclosure. As a result of Defendant's misleading disclosure, Plaintiff made a payment decision relative to the Subject Debt – a decision that he may not have taken if the March 15th Letter had not included Attorney Disclosure Language.

52. As a result of Plaintiff's thought process being influenced by Defendant's use of the Attorney Disclosure Language, Plaintiff called Defendant to see if he could make a payment to avoid having the Subject Debt recalled and sent to an attorney.

53. When Plaintiff called Defendant, he asked whether making the payment would prevent the Subject Debt from being recalled by LVNV and forwarded to an attorney.

54. In particular, Plaintiff asked Defendant's representative whether there was an amount that he could pay to avoid having the Subject Debt recalled by LVNV and forwarded to an attorney.

55. Plaintiff was told by Defendant's representative that the subject debt could be forwarded to an attorney if he did not pay the Subject Debt.

56. Thereafter, the representative suggested that Plaintiff should start to pay down the Subject Debt to avoid having the account recalled and sent to an attorney.

57. In response to the above described conversation, Plaintiff made a partial payment to avoid having the Subject Debt recalled and sent to an attorney for further legal action.

58. Plaintiff has retained legal counsel for the purpose of vindicating his rights pursuant to the FDCPA and to refund the payment that Plaintiff made in an attempt to resolve the Subject Debt to prevent the Subject Debt from being recalled by LVNV and forwarded to an attorney.

59. In retaining legal counsel, Plaintiff paid a retainer and is otherwise obligated to pay for certain expenses and cost associated with bringing this Civil Action.

### IV. Class Action Based Allegations

60. The phrase "[i]f we are unable to resolve your account during the time it remains in our office our client will recall your account and may forward it to an attorney" influenced Plaintiff and more than forty (40) consumers with Illinois mailing addresses to make partial or full payments to Defendant to avoid having their debts recalled and reviewed by legal counsel.

61. This Civil Action has been brought, and may properly be maintained, as a class action pursuant to Federal Rule of Civil Procedure 23(a)(1)-(4).

62. The proposed classes are so numerous that joinder of all members would be impractical.

63. Common questions of law and fact exist as to all members of the Plaintiff Class and those questions predominate over any questions or issues involving only individual class members. The principal issue is whether Defendant's initial form communication to consumers violates 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(5), 1692e(10) and 1692g.

64. Plaintiff's claims are typical of the claims of the class members. Plaintiff and all members of the Plaintiff Class have claims arising out of the Defendant's common uniform course of conduct complained of herein.

65. Plaintiff will fairly and adequately protect the interests of the class members insofar as Plaintiff has no interests that are adverse to the absent class members.

66. Plaintiff is committed to vigorously litigating this matter.

67. Plaintiff has also retained counsel experienced in handling consumer lawsuits, complex legal issues, and class actions.

68. Neither the Plaintiff nor Plaintiff's counsel have any interests which might cause them not to vigorously pursue the instant class action lawsuit.

69. Pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) Plaintiff brings this Civil Action on his own behalf and on behalf of the following classes.

    a. **Class A** consists of (a) all individuals with addresses in the state of Illinois (b) to whom Frontline (c) sent an initial[1] collection letter

---

[1] The phrase "initial collection letter" is intended to refer to the first letter out of a series of letters that Frontline sends to consumers. Consistent with certain obligations set forth by Section 1692g of the FDCPA, debt collectors must include certain disclosures on collection letters sent to

attempting to collect a consumer debt owed to LVNV Funding, LLC ("LVNV") (d) where the letter listed Synchrony Bank as the original creditor, (e) the letter included the words "[i]f we are unable to resolve your account during the time it remains in our office our client will recall your account and may forward it to an attorney", (f) Frontline's records reflect that individuals did not make payments to Frontline within 90 days of being sent the initial collection letter, and (g) Frontline's records reflect that the identified debts were not recalled by LVNV for lack of payment.

b. **Class B** consists of (a) all individuals with addresses in the state of Illinois (b) to whom Frontline (c) sent an initial collection letter attempting to collect a consumer debt owed to LVNV Funding, LLC ("LVNV") (d) where the letter listed Synchrony Bank as the original creditor, (e) the letter included the words "[i]f we are unable to resolve your account during the time it remains in our office our client will recall your account and may forward it to an attorney", (f) Frontline's records reflect that individuals did not make payments to Frontline within 90 days of being sent the initial collection letter, (g) Frontline's records reflect that the identified debts were recalled by LVNV for lack of payment and (h) LVNV's records show that the identified debts were not forwarded by LVNV to an outside attorney.

c. **Class C** consists of (a) all individuals with addresses in the state of Illinois (b) to whom Frontline (c) sent an initial collection letter attempting to collect a consumer debt owed to LVNV Funding, LLC ("LVNV") (d) where the letter listed Synchrony Bank as the original creditor, (e) the letter included the words "[i]f we are unable to resolve

---

consumers. See, § 1692g(a) ("Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing [.]"). The disclosures required by Section 1692g(a) are as follows:

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

As a general practice, most debt collectors include the statutory disclosures required by Section 1692g(a) in the first letter sent to consumers.

your account during the time it remains in our office our client will recall your account and may forward it to an attorney", (f) Frontline's records reflect that the identified debts were not recalled by LVNV and (g) Frontline's records reflect that individuals made payments to Frontline within 30 days of being sent the initial collection letter.

d. **Class D** consists of (a) all individuals with addresses in the state of Illinois (b) to whom Frontline (c) sent an initial collection letter attempting to collect a consumer debt owed to LVNV Funding, LLC ("LVNV") (d) where the letter listed Synchrony Bank as the original creditor, (e) the letter included the words "[i]f we are unable to resolve your account during the time it remains in our office our client will recall your account and may forward it to an attorney", (f) Frontline's records reflect that individuals made payments to Frontline within 30 days of being sent the initial collection letter, (g) Frontline's records reflect that the identified debts were recalled by LVNV and (h) LVNV's records show that the identified debts were not forwarded by LVNV to an outside attorney.

e. **Class E** consists of (a) all individuals with addresses in the state of Illinois (b) to whom Frontline (c) sent an initial collection letter attempting to collect a consumer debt owed to LVNV Funding, LLC ("LVNV") (d) where the letter listed Synchrony Bank as the original creditor, (e) the letter included the words "[i]f we are unable to resolve your account during the time it remains in our office our client will recall your account and may forward it to an attorney", (f) Frontline's records reflect that individuals did not make payments to Frontline within 90 days of being sent the initial collection letter, (g) Frontline's records reflect that the identified debts were recalled by LVNV and (h) LVNV's records show that the identified debts were not forwarded by LVNV to an outside attorney.

70.     The time period for both classes is limited in time to letters dated one year prior to the filing of this Civil Action and until Defendant revises its collection letters to eliminate the use of the Attorney Disclosure Language.

71.     The identities of all class members are readily ascertainable from the records of Defendant and those companies and entities on whose behalf they attempt to collect debts.

72.     Certification of a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that the questions of law and fact common to members of the Plaintiff Class predominate over any questions affecting an individual member,

and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

73.     The proposed class action is superior to the other available means for the fair and efficient adjudication of this controversy because individual joinder of all members would be impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum efficiently and without unnecessary duplication of effort and expense that individual actions would engender.

### V.  Causes of Action

### Count I - Violations of 15 U.S.C. §1692e

74.     Plaintiff repeats, reiterates and incorporates the allegations set forth in Paragraphs 1-73 as if fully set forth above.

75.     Defendant's debt collection efforts attempted and/or directed towards the Plaintiff violated various provisions of the FDCPA, including but not limited to 15 U.S.C. § 1692e.

76.     Pursuant to Section 15 U.S.C. §1692e of the FDCPA, a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.

77.     Defendant violated Section 1692e of the FDCPA because as noted above, consistent with industry practice, LVNV would have recalled the Subject Debt by a pre-ordained time and forwarded the collection of the Subject Debt to another collection agency.

78.     Defendant's use of the Attorney Disclosure Language in the March 15th Letter also violated Section 1692e because the Attorney Disclosure Language constituted a pressure tactic to cause Plaintiff to believe that he had to pay down the

debt immediately or risk the account being referred to an attorney for further legal proceedings.

79.     Plaintiff has suffered actual harm as a result of the objected to conduct, by and through making a payment to avoid having the debt recalled by LVNV and sent to an attorney for further action.

80.     Additionally, Plaintiff paid and retained legal counsel to prosecute this Civil Action to redress Plaintiff's legal rights.

**WHEREFORE,** Plaintiff demands judgment against Defendant as follows:

(a)     Awarding Plaintiff and the Class Members statutory damages;

(b)     Awarding Plaintiff and the Class Members actual damages;

(c)     Awarding Plaintiff Members costs of this Action, including reasonable attorneys' fees and expenses.

### Count II - Violations of 15 U.S.C. §1692e(2)(A)

81.     Plaintiff repeats, reiterates and incorporates the allegations set forth in Paragraphs 1-73 as if fully set forth above.

82.     Defendant's debt collection efforts attempted and/or directed towards the Plaintiff violated various provisions of the FDCPA, including but not limited to 15 U.S.C. § 1692e2(A).

83.     Section 1692e(2)(A) of the FDCPA prohibits a debt collector from using "any false, deceptive or misleading representation or means in connection with the collection of any debt" relative to "the character, amount or legal status of any debt."

84.     Defendant violated Section 1692e(2)(A) of the FDCPA because as noted above, consistent with industry practice, LVNV would have recalled the Subject Debt by a pre-ordained time and forwarded the collection of the Subject Debt to another collection agency.

85.     Defendant's use of the Attorney Disclosure Language in the March 15th Letter also violated Section 1692e(2)(A) because the Attorney Disclosure Language constituted a pressure tactic to cause Plaintiff to believe that he had to pay down the debt immediately or risk the account being referred to an attorney for further legal proceedings.

86.     Plaintiff has suffered actual harm as a result of the objected to conduct, by and through making a payment to avoid having the debt recalled by LVNV and sent to an attorney for further action.

87.     Additionally, Plaintiff paid and retained legal counsel to prosecute this Civil Action to redress Plaintiff's legal rights.

**WHEREFORE,** Plaintiff demands judgment against Defendant as follows:

(a)     Awarding Plaintiff and the Class Members statutory damages;

(b)     Awarding Plaintiff and the Class Members actual damages; and

(c)     Awarding Plaintiff costs of this Action, including reasonable attorneys' fees and expenses.

**Count III - Violations of 15 U.S.C. §1692e(5)**

88.     Plaintiff repeats, reiterates and incorporates the allegations set forth in Paragraphs 1-73 as if fully set forth above.

89.     Defendant's debt collection efforts attempted and/or directed towards the Plaintiff violated various provisions of the FDCPA, including but not limited to 15 U.S.C. § 1692e(5).

90.     Section 1692e(5) of the FDCPA prohibits a debt collector from using any "false, deceptive or misleading representation or means in connection with the collection of any debt, including but not limited to . . . (5) the threat to take any action that cannot legally be taken *or that is not intended to be taken*." (Emphasis supplied).

15

91. Defendant violated Section 1692e(5) of the FDCPA because as noted above, consistent with industry practice, LVNV would have recalled the Subject Debt by a pre-ordained time and forwarded the collection of the Subject Debt to another collection agency.

92. Defendant's use of the Attorney Disclosure Language in the March 15th Letter also violated Section 1692e(5) because the Attorney Disclosure Language constituted a pressure tactic to cause Plaintiff to believe that he had to pay down the debt immediately or risk the account being referred to an attorney for further legal proceedings.

93. In reality and consistent with industry practice, LVNV would have recalled the Subject Debt by a pre-ordained time and forwarded the collection of the Subject Debt to another collection agency.

94. Plaintiff has suffered actual harm as a result of the objected to conduct, by and through making a payment to avoid having the debt recalled by LVNV and sent to an attorney for further action.

95. Additionally, Plaintiff paid and retained legal counsel to prosecute this Civil Action to redress Plaintiff's legal rights.

**WHEREFORE,** Plaintiff demands judgment against Defendant as follows:

(a) Awarding Plaintiff and the Class Members statutory damages;

(b) Awarding Plaintiff and the Class Members actual damages; and

(c) Awarding Plaintiff costs of this Action, including reasonable attorneys' fees and expenses.

## Count IV - Violations of 15 U.S.C. §1692e(10)

96. Plaintiff repeats, reiterates and incorporates the allegations set forth in Paragraphs 1-73 as if fully set forth above.

16

97.     Section 1692e(10) of the FDCPA prohibits a debt collector from using "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." Defendant violated Section 1692e(10) of the FDCPA because as noted above, consistent with industry practice, LVNV would have recalled the Subject Debt by a pre-ordained time and forwarded the collection of the Subject Debt to another collection agency.

98.     Defendant violated Section 1692e(10) of the FDCPA because as noted above, consistent with industry practice, LVNV would have recalled the Subject Debt by a pre-ordained time and forwarded the collection of the Subject Debt to another collection agency.

99.     Defendant's use of the Attorney Disclosure Language in the March 15th Letter also violated Section 1692e(10) because the Attorney Disclosure Language constituted a pressure tactic to cause Plaintiff to believe that he had to pay down the debt immediately or risk the account being referred to an attorney for further legal proceedings.

100.     Plaintiff has suffered actual harm as a result of the objected to conduct, by and through making a payment to avoid having the debt recalled by LVNV and sent to an attorney for further action.

101.     Additionally, Plaintiff paid and retained legal counsel to prosecute this Civil Action to redress Plaintiff's legal rights.

**WHEREFORE,** Plaintiff demands judgment against Defendant as follows:

(a)     Awarding Plaintiff and the Class Members statutory damages;

(b)     Awarding Plaintiff and the Class Members actual damages; and

(c)     Awarding Plaintiff costs of this Action, including reasonable attorneys' fees and expenses.

## Count V - Violations of 15 U.S.C. §1692f

102.    Plaintiff repeats, reiterates and incorporates the allegations set forth in Paragraphs 1-73 as if fully set forth above.

103.    Section 1692f of the FDCPA prohibits a debt collector "us[ing] unfair or unconscionable means to collect or attempt to collect any debt.

104.    Defendant violated Section 1692f of the FDCPA because as noted above, consistent with industry practice, LVNV would have recalled the Subject Debt by a pre-ordained time and forwarded the collection of the Subject Debt to another collection agency.

105.    Defendant's use of the Attorney Disclosure Language in the March 15th Letter also violated Section 1692f because the Attorney Disclosure Language constituted a pressure tactic to cause Plaintiff to believe that he had to pay down the debt immediately or risk the account being referred to an attorney for further legal proceedings.

106.    In reality and consistent with industry practice, LVNV would have recalled the Subject Debt by a pre-ordained time and forwarded the collection of the Subject Debt to another collection agency.

107.    Plaintiff has suffered actual harm as a result of the objected to conduct, by and through making a payment to avoid having the debt recalled by LVNV and sent to an attorney for further action.

108.    Additionally, Plaintiff paid and retained legal counsel to prosecute this Civil Action to redress Plaintiff's legal rights.

**WHEREFORE,** Plaintiff demands judgment against Defendant as follows:

(a)     Awarding Plaintiff and the Class Members statutory damages;

(b)     Awarding Plaintiff and the Class Members actual damages; and

(c)     Awarding Plaintiff costs of this Action, including reasonable attorneys' fees and expenses.

**Count VI - Violations of 15 U.S.C. §1692g(b)**

109.    Plaintiff repeats, reiterates and incorporates the allegations set forth in Paragraphs 1-73 as if fully set forth above.

110.    Section 1692g(b) states as following:

> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

111.    By falsely threatening that Plaintiff was at risk of having the Subject Debt recalled and sent to an attorney if he was unable to resolve the Subject Debt *while it remained in Frontline's office*, Defendant overshadowed Plaintiff's rights to dispute and seek validation of the Subject Debt and have all collection activity stop as provided by Section 1692g(b) of the FDCPA.

112.    By falsely threatening that Plaintiff was at risk of having the Subject Debt recalled and sent to an attorney if he was unable to resolve the Subject Debt *while it remained in Frontline's office*, Defendant's Attorney Disclosure language was inconsistent with Plaintiff's right to dispute the Subject Debt and seek validation of the Subject Debt.

19

113. Defendant violated Section 1692g(b) of the FDCPA by making Plaintiff believe that his debt could be recalled during the 30 day time-period provided by Section 1692g(b) of the FDCPA.

114. Defendant violated the statutory rights provided by Section 1692g(a) of the FDCPA in violation of Section 1692g(b) of the Act by overshadowing the validation notice in violation of § 1692g(b).

115. As set forth above, Plaintiff and similarly situated unsophisticated consumers were confused by the interplay between the Attorney Disclosure Language and the thirty-day dispute and validation notice required by Section 1692g of the FDCPA.

116. On the one hand, the March 15th Letter notified Plaintiff and other unsophisticated consumers that they had thirty days to dispute their debts and seek validation of the their debts. And on the other hand, the form March 15th Letter stated that if the account is not resolved "during the time it remains in [Defendant's] office," the account could be forwarded to an attorney for further legal action.

117. Since the March 15th Letter did not say how long the accounts would remain with Defendant before being recalled by LVNV, the Attorney Disclosure language overshadowed and contradicted the 30 days that Plaintiff and other consumers had to dispute and seek validation of their debts.

118. Since the March 15th Letter did not say how long the accounts would remain with Defendant before being recalled by LVNV and Plaintiff was given no clear answer, the Attorney Disclosure language overshadowed and contradicted the 30 days that Plaintiff and other consumers had to dispute and seek validation of their debts, and consumers like Plaintiff who were worried about the account being recalled and forwarded to an attorney, were forced to make payments before the expiration of the 30

day validation and dispute period. *See, Ozkaya v. Telecheck Servs., Inc.*, 982 F. Supp. 578, 583 (N.D. Ill. 1997) ("Telecheck's warning that 'any delay' in payment 'may affect your ability to write checks' could confuse the unsophisticated consumer because it fails to explain how this comports with her thirty-day right to contest the debt.").

119.    Defendant violated Section 1692g(b) by using misleading Attorney Disclosure Language in the March 15th Letter which reasonably caused Plaintiff to believe that he had to pay down the debt immediately or risk the account being referred to an attorney for further legal proceedings.

120.    In reality and consistent with industry practice, upon information and belief, LVNV would have recalled the Subject Debt by a pre-ordained time and forwarded the collection of the Subject Debt to another collection agency.

121.    Plaintiff has suffered actual harm as a result of the objected to conduct, by and through making a payment to avoid having the debt recalled by LVNV and sent to an attorney for further action.

122.    Additionally, Plaintiff paid and retained legal counsel to prosecute this Civil Action to redress Plaintiff's legal rights.

**WHEREFORE,** Plaintiff demands judgment against Defendant as follows:

(a)    Awarding Plaintiff and the Class Members statutory damages;

(b)    Awarding Plaintiff and the Class Members actual damages; and

(c)    Awarding Plaintiff costs of this Action, including reasonable attorneys' fees and expenses.

**Plaintiff demands a trial by jury.**

Respectfully submitted,

Counsel for Plaintiff ADRIAN COSS and the proposed class members

Date: 4/7/2021

*/s/ James C. Vlahakis*
Sulaiman Law Group, Ltd.
2500 S. Highland Ave., Suite 200
Lombard, Illinois 60148
Phone: (630) 575-8181
jvlahakis@sulaimanlaw.com